WM. MC. HEMPHILL v. J. H. HEMPHILL.

*Evidence—Mistake—Correction of Deed—Trust—Trial—Lapse of Time—Possession.*

1. While a mistake in a deed cannot be corrected, or a deed absolute upon its face converted into a trust upon a mere preponderance of the evidence, or without proof of some fact *dehors* the deed inconsistent with the idea of absolute ownership, yet if issues are submitted to a jury without objection, and no exceptions are taken to the testimony and no instructions requested, the finding of fact by the jury cannot be reversed by the trial Court, sitting as a Chancellor, or by the Supreme Court, on appeal.

2. A Court of Equity will never refuse to lend its aid to relieve a party where he has been in continuous possesison of the estate to which the equity is incident.

This was a CIVIL ACTION, tried before *Montgomery, J.,* at August Term, 1887, of BUNCOMBE Superior Court.

The plaintiff alleges in substance: ,

1. That prior to April 14th, 1877, he was the owner in fee of the tract of land described in the complaint, containing about 725 acres, and of the value of $5,000 or $6,000.

2. That he had mortgaged a portion of said land, and there was a judgment against him as one of the sureties of J. M. Young, Sheriff, and under the mortgage and execution on the judgment, the land was sold.

3. That the defendant, who is the son of the plaintiff, became the purchaser of the land at both sales, and paid for the same about $966, under an agreement between the plaintiff and defendant that the latter should purchase the land, take the deed therefor, and hold the same for the plaintiff, and convey to him when he should re-imburse him the money paid, with interest therefor, " and in case he should fail to do so, his other children should have the right to do so, to such an extent as to make them equal owners in the said land with the defendant."

4. That relying upon this agreement and believing he was still the owner of the land, subject to the said incumbrance of $966, and interest, he had remained in possession since the sales, treating it as his own, listing it for taxation; paying taxes, &c., the defendant cultivating a portion of it the last year with plaintiff's consent.

5. That shortly prior to the beginning of this action he learned that it was the purpose of the defendant to ignore and refuse compliance with said agreement, and claim the land as his own, by virtue of the deed made to him as purchaser, &c., and turn the plaintiff out of possession. Thereupon the plaintiff applied to the defendant, to know if he would receive the money, and interest, and convey to the plaintiff, offering at once to procure the money, and interest, if he would accept the same and convey the land to the plaintiff, but he declared that he would not accept the said money or convey the lands to the plaintiff, but that he claimed the land as his own.

6. That the defendant has cut and removed from the land, and used and sold large quantities of valuable timber, the value of which he is entitled to have credited on the amount due from him to the defendant for the money paid on the land.

7. That the plaintiff is an old man, and anxious to save his land from sacrifice for the benefit of his children, and that he has delayed to re-imburse the defendant, because he was not able to support himself and raise so large a sum, without incumbering his property, and because he knew that the defendant was in no great need of it, and it was abundantly secure, but now he is ready to do whatever may be necessary, to compel the defendant to perform his agreement, &c.

He asks judgment that the defendant may be declared a trustee, &c., and that, upon the payment of such sum as shall be found to be due to him, by the plaintiff, he shall convey, &c. He also asks for an account, &c.

The defendant, in his answer, admits the plaintiff owned the land prior to April 14th, 1877; that the plaintiff was indebted and the land was sold, as alleged, and purchased by defendant, but he says that the land was not worth more than $3,000 or $3,500, and he denies that it was purchased under any agreement or understanding whatever with the plaintiff in reference thereto; that he purchased it in good faith as an investment, and there was no agreement with the plaintiff or any other person as to any right of redemption, and denies in detail every fact stated by the plaintiff, to the effect that the land was purchased for the plaintiff.

He admits that the plaintiff remained in possession, &c., but says that it was not by virtue of any agreement or understanding, but as a matter of gratuity, the plaintiff being his father, and that he intended to take care of him and allow him to use and enjoy the benefits of the land during his life, while it should be in his power to do so; that his father was insolvent, and that he himself derived no material benefit from the said property, but on the contrary he had made improvements thereon, his father having allowed it to become dilapidated, &c.

He further says that he never knew of or suspected any purpose, on the part of the plaintiff, to assert any claim to the said land until the fall of 1884, more than seven years after the purchase, during all which time the plaintiff recognized the title of the defendant to said land, and that he never mentioned the matter or offered to pay, or suggested payment for said land, until just before the beginning of this action, when, to the defendant's surprise, this claim was made by the plaintiff.

The defendant further says, that, at the time of the purchase and alleged agreement, the plaintiff was in debt and insolvent, and such promise and agreement, if made, would have been a fraud, &c. He further relies upon the lapse of time and the bar of the statute.

By consent of parties the issues were not settled until after the evidence was all introduced. There was much evidence offered on both sides: that on behalf of the plaintiff tending to show the agreement, as alleged by him, and that on behalf of the defendant, tending to disprove the same. The evidence, in full and at great length, is sent up with the record, but for reasons presently to be stated need not be recited.

The defendant tendered an issue as follows:

"Did the plaintiff, within a reasonable time, offer to repay the defendant the price he, defendant, had paid for the land?"

The Court said: "There seems to be no controversy as to the time when the money was offered to defendant by the plaintiff, to re-imburse him for the price he had paid for the land, to-wit: on the day, or a day or two before, suit began, and whether or not it was reasonable time, would be a question of law."

To this both parties assented, and the following issues were submitted by consent of both parties:

1. Did the defendant, before the sale, agree with plaintiff to buy the land and reconvey to the plaintiff, on being re-imbursed the purchase money?

2. What amount has the defendant received from the land?

There was no exception to the charge of the Court, and the jury, in response to the first issue, said "Yes," and to the second, "$600."

The defendant then moved for judgment *non obstante veredicto*, upon the following grounds:

1st. For that it appeared upon the whole evidence and from the complaint, that the alleged parol agreement, attempted to be set up by the plaintiff, was a bare, naked parol promise, without consideration to support it, or any element of fraud or equity, to supply the place of a written agreement, and that the alleged parol agreement should have

been shown by other testimony, than proof of the mere declarations of the defendant, and there should have been shown facts and circumstances *dehors* the deed, inconsistent with the idea of an absolute purchase by the defendant for himself.

2d. That plaintiff's demand was a stale demand.

3d. That it was barred by statute of limitations.

4th. That there was not only a variance between the allegations and proofs, but a failure of proof.

The Court declined to grant defendant's motion, and rendered judgment for the plaintiff, and defendant appealed.

*Mr. W. W. Jones*, for the plaintiff.
*Messrs. M. E. Carter* and *C. A. Moore*, for the defendant.

DAVIS, J., (after stating the case). The Judge accompanies the case sent to this Court with the remark: "I have stated the evidence in full, at the request of the parties and because of the defendant's motion for judgment *non obstante veredicto*," and the learned counsel for the defendant say, with candor, that the request was made with the view and purpose to ask this Court to review the evidence and declare it insufficient to disturb the defendant's deed, as they insist a Judge sitting as a chancellor would have done under the old practice.

We are referred by counsel to *Ely* v. *Early*, 94 N. C., 1, and numerous other cases, in which it is held that a mistake in a deed, or any other instrument solemnly reduced to writing, ought not to be corrected upon slight evidence or upon a mere preponderance of evidence, and that a purchaser taking to himself a deed absolute on its face, as in *Clement* v. *Clement*, 1 Jones Equity, 184; *Briggs* v. *Morris*, Ibid., 193; *Campbell* v. *Campbell*, 2 Jones Eq., 364, and numerous other cases, ought not to be converted into a trustee except upon clear and full proof, supported by facts and cir-

cumstances *dehors* the deed, inconsistent with the idea of an absolute purchase for himself.

In *Ely* v. *Early, supra,* in which, among things, it was sought to correct a mistake in a deed, it was held to be error in the Court to charge the jury, that it was sufficient to show the mistake "by a preponderance of evidence," but neither in that nor in any other case, we apprehend, has it been held under our present system, when issues of fact have been submitted, without objection, to a jury, that this Court can review and reverse or modify the finding of fact by the jury.

The contrary was here expressly held in *Shield* v. *Whitaker,* 82 N. C., 516, in which case the Chief Justice said: "The verdict of a jury may be set aside in a proper case, but it cannot be reformed or amended," and following this case is *Leggett* v. *Leggett,* 88 N. C., 108, in which Judge RUFFIN says: "But however these questions—(the right of parties to have their causes, when purely of an equitable nature, tried by the Court without the intervention of a jury, and the effect of the constitutional amendment of 1875, Art. IV, § 8, upon the jurisdiction of this Court,)—may be ultimately decided, it will never, we surmise, be held to be law that a party who has, of his own accord, accepted a trial by jury, can insist upon having the same facts passed upon by the Court."

Assuming, and such we think is the law, that a mistake in a deed cannot be corrected, or that a deed absolute on its face ought not to be converted into a trust, upon a mere preponderance of evidence, or without some fact *dehors* the deed, inconsistent with the idea of absolute ownership, but only upon such full proof as in the old Court of Equity would satisfy a Judge, yet when issues are submitted to a jury, and on the trial no exceptions are taken to the evidence or to the charge of the Court, and no instructions in relation thereto asked, the finding of fact by the jury cannot be reversed by the Court. The Court may be asked to instruct

the jury as to the degree of evidence necessary to show the mistake or establish the trust, and it is the duty of the Court to give such instructions. Such instructions were given in regard to the existence of a lost deed in *Loftin* v. *Loftin*, 96 N. C., 94, and if improper instructions are given, this Court may review and correct them, as was done in *Ely* v. *Early*, *supra;* but we cannot review the evidence and reverse the finding of the jury. The candid and able counsel for the defendant could refer us to no precedent for this, and hence we have not deemed it necessary to set out the evidence which we were asked to review. *McMillan* v. *Baker*, 85 N. C., 291.

It is proper to say, in regard to the position taken by counsel, that the alleged parol agreement should have been shown by other testimony than the mere declaration of the defendant, aside from the facts of possession, payment of taxes, &c., of which there was evidence. It was said in *Smiley* v. *Pearce*, 98 N. C., 185: "The declarations held to be insufficient, themselves, to show a trust which a Court of Equity will enforce, are such as are but admissions of a trust *antecedently* created, but do not include such as create and annex the trust to the legal estate."

The defence, that the plaintiff's demand was stale and barred by the statute of limitations cannot be maintained; as to the latter, there was no issue, and it is not insisted upon in this Court, and the former is met by the relations of the parties, and the fact. not controverted, that the plaintiff has been all the time in possession. *Stith* v. *McKee*, 87 N. C., 389; *Mask* v. *Tiller*, 89 N. C., 423.

The fourth exception cannot be sustained. The alleged variance is not pointed out, and there was evidence, upon the sufficiency of which, for the reasons already stated, we do not pass.

There is no error.